**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PRESTON WAYNE WALTERS,** | : | |
| **Petitioner** | : | **No. 1:25-cv-00071** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **COMMONWEALTH OF** | : | |
| **PENNSYLVANIA, <u>et</u> <u>al.</u>,** | : | |
| **Respondents** | : | |

<u>**MEMORANDUM**</u>

Currently before the Court is an application for leave to proceed <u>in</u> <u>forma</u> <u>pauperis</u> ("IFP

Application") and a petition for a writ of habeas corpus under 28 U.S.C. § 2254 filed by pro se

Petitioner Preston Wayne Walters ("Walters"). Walters also filed several motions, including two

(2) motions for extensions of time, a "motion for immediate action," a second motion to compel,

a motion to appoint counsel, a "motion to know," and a motion to vacate. For the reasons stated

below, the Court will (1) grant the IFP Application and Walters's two (2) motions for extensions

of time, (2) dismiss with prejudice Walters's Section 2254 petition as untimely, (3) deny his

motion to appoint counsel and second motion to compel as moot, (4) deem his remaining

motions withdrawn for his failure to file briefs in support of the motions, (5) decline to issue a

certificate of appealability, and (6) direct the Clerk of Court to close this case.

## I.    BACKGROUND

Walters was convicted of robbery (18 Pa. C.S. § 3701(a)(1)(ii)) following a bench trial in

the Court of Common Pleas of Dauphin County. <u>See</u> (Doc. No. 1 at 1 (referencing

<u>Commonwealth v. Walters</u>, No. CP-22-CR-0002967-2014 (Dauphin Cnty. Ct. Com. Pl. <u>filed</u>

June 10, 2014)));[1] <u>Commonwealth v. Walters</u>, No. 159 MDA 2015, 2015 WL 7738045, at *1–2 (Pa. Super. Ct. Dec. 1, 2015) (unpublished) ("<u>Walters I</u>").  Following the bench trial, the trial court sentenced Walters to a minimum of ten (10) years to a maximum of twenty (20) years of state incarceration.  <u>See</u> (Doc. No. 1 at 1); <u>Walters I</u>, at *2.  Walters then filed an appeal to the Pennsylvania Superior Court, which affirmed his judgment of sentence on December 1, 2015. <u>See</u> (Doc. No. 1 at 3); <u>Walters I</u>, at *1, 5.  Walters did not challenge the Superior Court's decision by filing a petition for allowance of appeal with the Pennsylvania Supreme Court.  <u>See</u> <u>Commonwealth v. Walters</u>, No. 1954 MDA 2018, 2019 WL 4052372, at *1 (Pa. Super. Ct. Aug. 28, 2019) (unpublished) ("<u>Walters II</u>").

Having been unsuccessful on direct review, Walters pursued post-conviction collateral relief by filing his first petition under Pennsylvania's Post Conviction Relief Act, 42 Pa. C.S. §§ 9541–46 ("PCRA"), on November 29, 2016.  <u>See</u> (Doc. No. 1 at 4); <u>Walters II</u>, at *1.[2]  The PCRA court dismissed Walters's petition on November 21, 2017.  <u>See</u> (Doc. No. 1 at 4); <u>Walters II</u>, at *2.  Walters filed an appeal from this dismissal to the Superior Court, which quashed the appeal on March 2, 2018, because PCRA counsel failed to file a docketing statement.  <u>See</u> (Doc. No. 1 at 5); <u>Walters II</u>, at *2.

---

[1]  The Court takes judicial notice of the docket from Walters's underlying criminal case and will cite to it as "CCP Docket."  <u>See</u> <u>Zedonis v. Lynch</u>, 233 F. Supp. 3d 417, 422 (M.D. Pa. 2017) ("Pennsylvania's Unified Judicial System provides online access to the docket sheets for criminal cases, and this Court may take judicial notice of those public dockets." (citations omitted)).

[2]  It is unclear when Walters filed his first PCRA petition.  The Superior Court stated that he filed it on November 29, 2016, <u>see</u> <u>Walters II</u>, at *1, whereas Walters alleges that he filed it on November 30, 2016, <u>see</u> (Doc. No. 1 at 4).  For purposes of this Order, the Court gives Walters the benefit of the earlier of these dates even though the precise filing date does not affect the outcome in this case.

Walters retained new counsel, who was able to get the PCRA court to reinstate Walters's appellate rights nunc pro tunc on November 6, 2018, allowing Walters to again appeal to the Superior Court. See Walters II, at *2. On August 28, 2019, the Superior Court affirmed the dismissal of Petitioner's PCRA petition. See id. at *3. Walters then filed a petition for allowance of appeal with the Pennsylvania Supreme Court, which denied the petition on June 1, 2020. See (Doc. No. 1 at 6); Commonwealth v. Walters, 235 A.3d 267 (Pa. 2020) (table); Commonwealth v. Walters, No. 924 MDA 2022, 2022 WL 17661613, at *1 (Pa. Super. Ct. Dec. 14, 2022) (unpublished) ("Walters III").

On or about February 8, 2021, Walters filed a letter in this Court in which he sought an extension to file a Section 2254 habeas petition. See Walters v. Warden of SCI-Camp Hill, No. 21-cv-00230 (M.D. Pa. filed Feb. 8, 2021), ECF No. 1. After Walters paid the filing fee, this Court issued an Order on March 9, 2021, which, inter alia, denied Walters's letter request for an extension to file a Section 2254 petition and directed the Clerk of Court to close the case. See id., ECF No. 10.[3] Walters did not appeal this decision to the Third Circuit Court of Appeals.

---

[3] In denying the motion, the Court explained that the statute of limitations for filing a Section 2254 petition had already expired well before Walters filed his motion seeking an extension of time and pointed out that:

> [Walters]'s motion simply does not set forth any allegations sufficient to support a claim for habeas relief such that the Court could construe it as a § 2254 petition and give [Walters] the requisite notice of such recharacterization. See Anderson v. Pa. Att'y Gen., 82 F. App'x 745, 749 (3d Cir. 2003). Moreover, even if [Walters]'s motion were recharacterized as a § 2254 petition, nothing within the motion suggests that equitable tolling of the limitations period would be warranted to allow [Walters] to file an amended petition "to add supporting facts and/or new claims." See id. at 750. Even if [Walters]'s "motion for an extension of time is construed as a habeas petition, [Walters] is precluded from amending it after the expiration of the statute of limitations." See id. at 751.

See id. at 4.

Several months later, Walters filed a package of documents titled, "RE: Federal Habeas Corpus Relief," which the Clerk of Court docketed on July 19, 2021.  See Walters v. Warden, SCI Camp Hill, et al., No. 21-cv-01258 (M.D. Pa. filed July 19, 2021), ECF No. 1.  In this submission, Walters indicated that an attorney had not filed a federal habeas corpus petition as Walters requested him to do, and Walters asked the Court to review his submission.  See id. at 1–3.  Walters also submitted several requests seeking the appointment of counsel.  See Walters v. Warden, SCI Camp Hill, et al., No. 21-cv-01258 (M.D. Pa.), ECF Nos. 4–6.  On August 25, 2021, the Court dismissed the action without prejudice due to Walters's failure to either pay the fee or seek leave to proceed in forma pauperis.  See Walters v. Warden, SCI Camp Hill, et al., No. 21-cv-01258 (M.D. Pa.), ECF No. 7.  Nevertheless, six (6) days later, the Clerk of Court docketed a supplement from Walters consisting of sixteen (16) handwritten pages of arguments and statements along with an additional ninety-one (91) pages of attached exhibits.  See (Doc. No. 8).

Following these federal filings, Walters returned to state court and filed a second PCRA petition in the Court of Common Pleas on September 24, 2021.  See Walters III, at *1 (citation omitted).  Although the PCRA court appointed counsel to represent Walters, it ultimately dismissed his second PCRA petition as untimely and without a hearing on November 30, 2021. See id. (citation omitted).  Walters did not file an appeal from that dismissal.  See id. (citation omitted).  He did, however, file a pro se petition for a writ of habeas corpus in the Court of Common Pleas, which was treated as his third PCRA petition.  See id.; see also 42 Pa. C.S. § 9542 ("The action established in this subchapter shall be the sole means of obtaining collateral relief and encompasses all other common law and statutory remedies for the same purpose that exist when this subchapter takes effect, including habeas corpus and coram nobis.").  The PCRA

4

court dismissed Walters's third PCRA petition as untimely and without a hearing on June 7, 2022. See Walters III, at *1. Walters timely appealed from the dismissal to the Superior Court, which affirmed the dismissal on December 14, 2022. See id. at *1, 3. Walters then filed a petition for allowance of appeal with the Pennsylvania Supreme Court, which denied the petition on November 14, 2023. See Commonwealth v. Walters, 307 A.3d 1200 (Pa. 2023) (table).

Walters filed a fourth PCRA petition with the Court of Common Pleas on or about January 8, 2024. See (Doc. No. 1 at 10); CCP Docket. The PCRA court dismissed his fourth PCRA petition without a hearing on February 26, 2024. See CCP Docket. Walters appealed from the dismissal to the Superior Court. See (Doc. No. 1 at 10); Commonwealth v. Walters, No. 381 MDA 2024, 2025 WL 1743946 (Pa. Super. Ct. June 24, 2025) (unpublished) ("Walters IV"). The Superior Court affirmed the dismissal on June 24, 2025. See id. at *3.

While Walters's most recent appeal was pending before the Superior Court, he pursued federal habeas relief by filing the instant Section 2254 habeas petition on January 10, 2025.[4] (Doc. No. 1.) He has also filed an application for leave to proceed in forma pauperis ("IFP Application") (Doc. No. 2) and a certified copy of his prisoner trust fund account statement (Doc. No. 6). On March 3, 2025, Walters filed a motion to compel this Court to rule on his habeas petition. (Doc. No. 7.)

---

[4] The federal "prisoner mailbox rule" provides that a pro se prisoner's submission is deemed filed "at the time [the prisoner] delivered it to the prison authorities for forwarding to the court clerk." See Houston v. Lack, 487 U.S. 266, 276 (1988). Unfortunately, when filing his habeas petition, Walters did not include a declaration stating when he delivered the petition to prison authorities for mailing to the Clerk of Court. See (Doc. No. 1 at 13). Nonetheless, the envelope containing the petition is postmarked January 10, 2025. See (id. at 14). As such, the Court uses January 10, 2025, as the petition's filing date even though the Clerk of Court did not docket it until January 13, 2025. Cf. Fed. R. App. P. 4(c)(1)(A)(ii) (providing that evidence such as a postmark may establish the date of filing of a notice of appeal by a prisoner).

On March 20, 2025, the Court entered an Order deeming withdrawn Walters's motion to compel because he failed to file a supporting brief in accordance with Local Rule 7.5.[5]  (Doc. No. 8.)  Walters then filed a "motion for immediate action" on March 24, 2025 (Doc. No. 9) and a second motion to compel along with a supporting brief on April 1, 2025 (Doc. Nos. 10, 11).

On May 6, 2025, the Court issued an Order which directed Walters to show cause why the Court should not dismiss his Section 2254 petition as untimely within thirty (30) days from the date of the Order.  (Id.); see also United States v. Bendolph, 409 F.3d 155, 169 (3d Cir. 2015) (concluding that district courts may raise sua sponte the Antiterrorism and Effective Death Penalty Act ("AEDPA") limitations period provided that the petitioner is given notice of the timeliness issue and an opportunity to respond).  A week later, on May 13, 2025, Walters filed a motion for an extension of time to file a memorandum of law in support of his habeas petition. (Doc. No. 13.)  Walters then filed his supporting memorandum of law on May 16, 2025.  (Doc. No. 14.)

Walters filed a motion for an extension of time to file a response to the Order to Show Cause on May 23, 2025.  (Doc. No. 15.)  Four (4) days later, Walters's response was docketed by the Clerk of Court.  (Doc. No. 16.)

On July 11, 2025, Walters filed a motion to appoint counsel and a "motion to know."  See (Doc. Nos. 18, 19).  In the latter motion, Walters "requests to know" whether he needs to file certain documents from the Commonwealth of Pennsylvania Department of State with two Dauphin County Court of Common Pleas Judges and several other individuals.  See (Doc. No. 19

---

[5] Local Rule 7.5 provides that "[w]ithin fourteen (14) days after the filing of any motion, the party filing the motion shall file a brief in support of the motion.  If a supporting brief is not filed within the time provided in this rule the motion shall be deemed to be withdrawn."  See M.D. Pa. L.R. 7.5.

at 1).  Three days later, Walters filed a motion to vacate in which he seeks to have the Court

vacate his purportedly illegal sentence.  (Doc. No. 20.)

## II.    LEGAL STANDARDS

### A.    The IFP Application

Under 28 U.S.C. § 1915(a)(1), the Court "may authorize the commencement . . . of any

suit, action or proceeding, civil or criminal, . . . without prepayment of fees or security therefor,

by a person who submits an affidavit that includes a statement of all assets such prisoner

possesses that the person is unable to pay such fees or give security therefor."  See id.  This

statute

> "is designed to ensure that indigent litigants have meaningful access to the federal
> courts."  Neitzke v. Williams, 490 U.S. 319, 324, 109 S.Ct. 1827, 104 L.Ed.2d 338
> (1989).  Specifically, Congress enacted the statute to ensure that administrative
> court costs and filing fees, both of which must be paid by everyone else who files
> a lawsuit, would not prevent indigent persons from pursuing meaningful litigation.
> [Deutsch v. United States, 67 F.3d 1080, 1084 (3d Cir. 1995)].  Toward this end, §
> 1915(a) allows a litigant to commence a civil or criminal action in federal court in
> forma pauperis by filing in good faith an affidavit stating, among other things, that
> [they are] unable to pay the costs of the lawsuit.  Neitzke, 490 U.S. at 324, 109 S.Ct.
> 1827.

See Douris v. Middletown Twp., 293 F. App'x 130, 131–32 (3d Cir. 2008) (unpublished)

(footnote omitted).

A litigant can show that they are unable to pay the costs of the lawsuit "based on a

showing of indigence."  See Deutsch, 67 F.3d at 1084 n.5.  The Third Circuit Court of Appeals

has not defined what it means to be indigent; nevertheless, "[a] plaintiff need not 'be absolutely

destitute to enjoy the benefit of the statute.'"  See Mauro v. N.J. Supreme Ct., 238 F. App'x 791,

793 (3d Cir. 2007) (unpublished) (quoting Adkins v. E.I. DuPont de Nemours & Co., 335 U.S.

331, 339 (1948)).  Some district courts have explained that all a litigant needs to show is that

because of their poverty, they cannot afford to pay for the costs of the litigation and provide

7

themselves with the necessities of life.  See, e.g., Rewolinski v. Morgan, 896 F. Supp. 879, 880 (E.D. Wis. 1995) ("An affidavit demonstrating that the petitioner cannot, because of his poverty, provide himself and any dependents with the necessities of life is sufficient."); Jones v. State, 893 F. Supp. 643, 646 (E.D. Tex. 1995) ("An affidavit to proceed in forma pauperis is sufficient if it states that one cannot, because of poverty, afford to pay for the costs of litigation and still provide for him- or herself and any dependents.").

**B.    Screening of Habeas Petitions**

District courts are obligated to screen habeas petitions pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts.  See R. 4, 28 U.S.C. foll. § 2254 (providing for initial reviews of Section 2254 habeas petitions).  Following this review, "a district court is authorized to dismiss a [habeas] petition summarily when it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court."  Lonchar v. Thomas, 517 U.S. 314, 320 (1996); see also R. 4, 28 U.S.C. foll. § 2254 ("If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner."); McFarland v. Scott, 512 U.S. 849, 856 (1994) ("Federal courts are authorized to dismiss summarily any habeas petition that appears legally insufficient on its face.").

**C.    Statute of Limitations for Section 2254 Petitions**

AEDPA generally provides that state prisoners are subject to a one (1)-year statute of limitations for the filing of a Section 2254 petition, which:

shall run from the latest of –

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

8

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

See 28 U.S.C. § 2244(d)(1).  Pursuant to AEDPA, a petitioner generally must file a federal habeas corpus petition within one (1) year of the date their conviction became final.  See 28 U.S.C. § 2244(d)(1)(A).  "Under § 2244(d)(1)(A), a state court criminal judgment becomes 'final,' and the statute of limitations begins to run, 'at the conclusion of review in the United States Supreme Court or when the time for seeking certiorari review expires.'"  Jones v. Morton, 195 F.3d 153, 157 (3d Cir. 1999) (quoting Kapral v. United States, 166 F.3d 565, 575 (3d Cir. 1999) and citing Morris v. Horn, 187 F.3d 333, 337 n.1 (3d Cir. 1999)).

## III.    DISCUSSION

### A.    The IFP Application

After reviewing the IFP Application and certified prison trust fund account statement, it appears that Walters is unable to pay the costs of this habeas action.  Therefore, the Court will grant him leave to proceed in forma pauperis in this case.

### B.    Motions for Extensions of Time

Walters filed a motion for an extension of time to file a memorandum in support of his Section 2254 habeas petition (Doc. No. 13) and a motion for an extension of time to file a response to the Court's Order to Show Cause (Doc. No. 15).  Walters set forth good cause for the requested extensions in his motions.  See Fed. R. Civ. P. 6(b)(1) ("When an act may or must be

done within a specified time, the court may, for good cause, extend the time: (A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or (B) on motion made after the time has expired if the party failed to act because of excusable neglect."). Therefore, the Court will grant the motions and deem Walters's supporting memorandum of law (Doc. No. 14) and response to the Court's Order to Show Cause (Doc. No. 16) as timely filed.

### C.     Walters's Motion for Immediate Action, "Motion to Know," and Motion to Vacate

Walters filed a "motion for immediate action" and a "motion to vacate," both of which relate to his general claim that he is entitled to habeas relief. (Doc. Nos. 9, 20.) He also filed a "motion to know," in which he asked the Court to inform him whether he is required to send certain documents to certain identified individuals. (Doc. No. 19 at 1–2.) The Court will deem these motions withdrawn due to Walters's failure to file briefs in support of the motions within fourteen (14) days of their filing in accordance with Local Rule 7.5.[6] See M.D. Pa. L.R. 7.5.

### D.     Section 2254 Habeas Petition

#### 1.     Timeliness of the Petition

After reviewing Walters's Section 2254 habeas petition pursuant to Rule 4 of the Rules Governing Section 2254 Petitions, it plainly appears that the petition is untimely and not subject to equitable tolling. In this regard, Walters's judgment of sentence became final on December 31, 2015, when he did not seek discretionary review by filing a petition for allowance of appeal with the Pennsylvania Supreme Court within thirty (30) days after the Superior Court affirmed his judgment of sentence. See Pa. R.A.P. 1113(a) ("Except as otherwise prescribed by this rule,

---

[6] It is also inappropriate for Walters to seek legal advice from the Court, and the Court cannot provide him with legal advice.

10

a petition for allowance of appeal shall be filed with the Prothonotary of the Supreme Court within 30 days after the entry of the order of the Superior Court or the Commonwealth Court sought to be reviewed.").  Therefore, AEDPA's one-year statute of limitations began to run on January 1, 2016, and Walters had one (1) year from that date, i.e., until January 1, 2017, to file a Section 2254 petition unless any statutory or equitable tolling period applies.

### 2.    Statutory Tolling

Concerning statutory tolling, AEDPA contains a tolling provision, which provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."  See 28 U.S.C. § 2244(d)(2).  A "properly filed application" for state post-conviction collateral review is "one submitted according to the state's procedural requirements, such as the rules governing the time and place of filing."  See Lovasz v. Vaughn, 134 F.3d 146, 148 (3d Cir. 1998).  "State prisoners therefore must file their state claims promptly and properly under state law in order to preserve their right to litigate constitutional claims that are more than one year old in federal court."  Fahy v. Horn, 240 F.3d 239, 243 (3d Cir. 2001).  If the state court dismisses a late-filed application for post-conviction collateral review because it is time-barred, the application does not constitute a "properly filed application" for AEDPA tolling purposes.  See Merritt v. Blaine, 326 F.3d 157, 165–66 (3d Cir. 2003).

In the instant case, three hundred and thirty-five days (335) days of the one (1)-year limitations period ran until Walters filed his first PCRA petition on November 29, 2016. Pursuant to Section 2244(d)(2), the limitations period remained tolled until June 1, 2020, when the Supreme Court of Pennsylvania denied Walters's petition for allowance of appeal.  At that point, only thirty (30) days of the limitations period remained.  Thus, Walters had to file a

Section 2254 petition on or about July 1, 2020, for it to be timely. Walters did not file his Section 2254 petition in this case until January 10, 2025, approximately four and a half (4 ½) years after his statutory tolling period ended.[7]

### 3. Equitable Tolling

Because statutory tolling does not save Walters's Section 2254 habeas petition, the only way that the Court could determine that it is timely is through equitable tolling. "Equitable tolling is available 'only when the principle of equity would make the rigid application of a limitation period unfair.'" Satterfield v. Johnson, 434 F.3d 185, 195 (3d Cir. 2006) (quoting Merritt, 326 F.3d at 168). For that reason, "[a] petitioner seeking equitable tolling bears the burden to show that [they] diligently pursued [their] rights and that some 'extraordinary circumstance stood in [their] way.'" See id. (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). "The diligence required for equitable tolling purposes is 'reasonable diligence.'" Holland v. Florida, 560 U.S. 631, 653 (2010). Also, extraordinary circumstances exist if "(1) the [respondent] has actively misled the [petitioner]; (2) if the [petitioner] has in some extraordinary way been prevented from asserting [their] rights; or (3) if the [petitioner] has timely asserted [their] rights mistakenly in the wrong forum." See Satterfield, 434 F.3d at 195 (quoting Fahy, 240 F.3d at 244).[8] Overall, courts "are 'sparing' in [their] use of [equitable tolling]," see Martin

---

[7] It does not appear that any of Walters's second or subsequent PCRA petitions qualify to further toll the limitations period because the Pennsylvania state courts deemed them to be untimely filed. See, e.g., Walters III, at *2–3 (affirming PCRA court's dismissal of Walters's second PCRA petition as untimely); Walters IV, at *3.

[8] A credible showing of actual innocence can also overcome AEDPA's limitations period, although such showings are "rare." See McQuiggin v. Perkins, 569 U.S. 383, 386 (2013). "[A] petitioner does not meet the threshold requirement unless [they] persuade[] the district court that, in light of . . . new evidence, no juror, acting reasonably, would have voted to find [them] guilty beyond a reasonable doubt." Id. at 386 (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)); see also Reeves v. Fayette SCI, 897 F.3d 154, 161 (3d Cir. 2018) ("The threshold requirement for

v. Adm'r N.J. State Prison, 23 F.4th 261, 272 (3d Cir. 2022) (citations omitted), and "[t]he decision to equitably toll § 2244(d) 'must be made on a case-by-case basis.'"  See Munchinski v. Wilson, 694 F.3d 308, 329 (3d Cir. 2012) (quoting Holland, 560 U.S. at 649–50).

Here, Walters asserts the following narrative to justify this Court equitably tolling the limitations period.  He avers that in December 2014, his trial counsel was constitutionally ineffective when she failed to argue that there was a purported defect with the affidavit of probable cause for his arrest as well as the lack of an arrest warrant.  (Doc. No. 16 at 2–3.)  This claim was not raised by direct appeal counsel or initial PCRA counsel.[9]  (Id. at 3–4.)  Walters then retained Michael O. Palermo, Jr., Esq. ("Attorney Palermo") to represent him on appeal from the denial of his first PCRA petition, and he represented Walters until the Pennsylvania Supreme Court denied Walters's petition for allowance of appeal in June 2020.  (Id. at 4.)

Following this denial, Attorney Palermo sent Walters a letter dated June 4, 2020, stating that, inter alia, (1) Walters's "next option [was] for [him] to move [his] legal challenges to the Federal System, namely the United States District Court for the Middle District of Pennsylvania"; (2) Walters's federal legal challenge "would most likely be in the form of a habeas corpus petition"; (3) Walters had "exhausted all [his] state court remedies and this matter is ripe for the Federal System"; (4) Attorney Palermo knew that Walters had "legal advisors in the prison" and "perhaps [these advisors could] fill [Walters] in on the pro se filings needed to

---

applying the actual innocence standard is new evidence supporting the petitioner's innocence."). Here, however, it does not appear that Walters asserts his actual innocence as a basis to avoid AEDPA's time-bar.  Even if he did, he does not identify any newly discovered evidence that would show his factual innocence.  Instead, his arguments, at best, relate to the legal sufficiency of his convictions, which are insufficient to show his actual innocence.  See Reeves, 897 F.3d at 160 ("In this context, actual innocence refers to factual innocence, not legal insufficiency.").

[9]  Walters states that his initial PCRA counsel was later suspended for approximately one (1) year by the Pennsylvania Supreme Court's Disciplinary Board.  (Id. at 4.)

get into the Federal System"; and (5) Attorney Palermo does "not usually participate in Federal

Habeas Petitions and welcome[s Walters] reaching out to [him if he] wish[ed] to discuss [his]

options." See (Doc. No. 16-1 at 18). When Walters received Attorney Palermo's letter, he was

incarcerated in Pennsylvania State Correctional Institution Camp Hill ("SCI Camp Hill")'s

infirmary. (Doc. No. 16 at 5.) Although Walters "repeatedly" tried to contact Attorney Palermo

after receiving the letter, and Walters's family tried to contact him as well, Attorney Palermo did

not answer their calls. See (id.).

    Walters points out that while he was in SCI Camp Hill's infirmary, it was deemed to be a

restricted housing unit and, as such, he lacked access to legal books or individuals to act as his

legal aides. (Id.) Nevertheless, Walters "wrote the [SCI Camp Hill law library] requesting help"

but was told that the library "cannot do legal research for inmates."[10] See (id.). He was also told

---

[10] Attached to Walters's response is a document dated February 1, 2022, apparently from SCI
Camp Hill's law library, which states as follows:

> The law library cannot do legal research for inmates. You must submit a request
> slip along with a signed cash slip and specific instructions (specific statutes, forms,
> case law, policy, etc...[sic]) of what you want copied. Copies and printouts are
> $0.10 a page and you must have sufficient funds in your account.
>
> Per policy DC-ADM 007
>
>     A. Legal Assistance Services
>         1. To be eligible to receive legal assistance an inmate must:
>             a. Be legitimately illiterate[.]
>             b. Lack the skills or comprehension to speak or understand English in
>                its written form.
>             c. Have a disability that substantially interferes with his/her ability to
>                use or understand legal materials.
>
> Law Library satellite services are available to you by request slip for your legal
> material needs.

See (Doc. No. 16-1 at 16).

that he did not qualify for a legal aide "due to [his] ability to read, write[,] and understand [E]nglish."  See (id.).

In mid-May 2021, Walters called Attorney Palermo and spoke to him.  (Id.)  Attorney Palermo purportedly "agreed to [f]ile a Federal Habeas Corpus petition for" Walters.  See (id.).  However, on June 22, 2021, Walters received a "NOTICE" from Attorney Palermo "reguarding [sic] the Federal Habeas Corpus petition and returning some of [Walters's] paid funds."  See (id.).  This "NOTICE" is a letter dated June 22, 2021 from Attorney Palermo to an individual identified as Walters's mother.  See (Doc. No. 16-1 at 19.)

In this letter, Attorney Palermo stated that he had "quoted [Walters] a flat fee of $2200.00 to take on his Federal Habeas Corpus matter."  See (id.).  Thereafter, Attorney Palermo received two (2) checks totaling $1,800.  (Id.)  Attorney Palermo informed Walters's mother that he deposited one (1) of the checks because Walters had "sent [his] office well over forty (40) letters this year that required by [sic] attention."  See (id.).  In addition, Attorney Palermo indicated that "[s]ometime after we met[, Walters] provided [his] office with correspondence [stating] that he was already time barred for Federal Habeas Corpus proceedings."  See (id.).  Attorney Palermo explained that his paralegal and Walters had "gone back and forth in regard to the possibility of investigating the presence of after discovered evidence in order to file a new PCRA in State Court."  See (id.)  An investigation was conducted, however, Attorney Palermo's office had "been unable to find any such evidence."  See (id.).  As such, Attorney Palermo explained that he did "not see a way forward with the Federal Habeas or a subsequent State Court PCRA filing."  See (id.).  Attorney Palermo concluded his letter by pointing out that he was returning the remaining amount of the money paid to him.  (Id.)  Additionally, he explained to Walters's mother that they had "repeatedly tried to address all of [Walters's] concerns; however, it seems

15

as though there is one concern after another, and [Attorney Palermo] fear[ed Walters] will never be satisfied with anybody who cannot accomplish his goal of being released from jail." See (id.).

Walters believes that he was not supplied with sufficient access to the courts while in the infirmary; as such, on February 2, 2022, he submitted a grievance about this issue. (Id.) Less than a week later, Walters received a pass to spend two (2) hours in the law library. (Id. at 6.) Walters spent the time in the library; however, he asserts that it "was basicly [sic] a waste of time" because no "[l]egal [a]ides were available" to help him. See (id.). Although there were no legal aides there that day, the law librarian helped him "get into Federal Habeas Corpus" case law. See (id.). This case law apparently did not assist Walters because he did not know "what he needed, nor what to do, and could not operate the computer." See (id.).

On March 10, 2022, Walters was removed from the infirmary and returned to general population. (Id.) In mid-April 2022, Walters accessed the law library and "pursued assistance by an [sic] legal aide." See (id.). The legal aide reviewed Walters's criminal complaint and affidavit of probable cause, and he informed Walters that there was a "[c]onstitutional [d]ue [p]rocess [v]iolation." See (id.). The legal aide also assisted Walters with filing "a [writ] to the [t]rial [c]ourt," which the clerk of the trial court docketed on May 13, 2022. See (id.). Walters's "writ" "stat[ed] the '[i]nvalidity of the [a]ffidavit of [p]robable [c]ause and [l]ack of [w]arrant." See (id.). Walters complains that the trial court "incorrectly treated the [writ] as a [PCRA] petition." See (id.).[11]

---

[11] Walters's assertion that the trial court "incorrectly" treated his "writ" as a PCRA petition is inaccurate. "[I]t is well established that pursuant to Pennsylvania law, the PCRA subsumes the writ of habeas corpus unless the claim does not fall within the ambit of the PCRA statute." See Commonwealth v. Burkett, 5 A.3d 1260, 1274 (Pa. Super. Ct. 2010) (citations omitted); see also 42 Pa. C.S. § 9542 ("The action established in this subchapter shall be the sole means of obtaining collateral relief and encompasses all other common law and statutory remedies for the same purpose that exist when this subchapter takes effect, including habeas corpus and coram

Soon thereafter, Walters was transferred from SCI Camp Hill to Pennsylvania State Correctional Institution Mahanoy ("SCI Mahanoy").  (Id.)  Although Walters signed up for a pass to the law library, he was transferred to Pennsylvania State Correctional Institution Smithfield ("SCI Smithfield") after being incarcerated at SCI Mahanoy for only three and a half (3½) weeks, and then was transferred to Pennsylvania State Correctional Institution Fayette ("SCI Fayette") after being confined at SCI Mahanoy for approximately one (1) month.  (Id. at 6–7, 9.)  While at SCI Fayette, Walters received legal assistance from a "law knowing [i]nmate," who assisted him with filing another PCRA petition.  See (id. at 7).  The PCRA court issued a notice of intent to dismiss Walters's newest petition without a hearing under Pennsylvania Rule of Criminal Procedure 907 because it was untimely filed.  (Id.)

Walters apparently later filed another "writ" with the PCRA court, which again responded by treating the submission as a PCRA petition and issuing a notice of intent to dismiss the PCRA petition without a hearing.  See (id.).  Walters notes that he unsuccessfully challenged this by appealing to the Pennsylvania Superior Court and Pennsylvania Supreme Court.  (Id.)

Based on these factual assertions, Walters argues that he presents extraordinary circumstances to justify the Court equitably tolling the limitations period in this case.  (Id. at 7–8.)  He contends that he "has shown a repeated [m]iscarriage of [j]ustice, [c]learly [e]stablished [l]aw, and [a]ttorney [m]isconduct that was not merely 'negligent' nor 'grossly negligent.'"  See

---

nobis.").  Walters's claims about the invalidity or deficiencies with the criminal complaint and affidavit of probable cause in his criminal case, as well as any claims of ineffective assistance by his trial counsel, are cognizable in a PCRA petition.  See, e.g., Commonwealth v. Roach, Nos. 1334 MDA 2022, 1335 MDA 2022, 2023 WL 6972401, at *3–4 (Pa. Super. Ct. Oct. 23, 2023) (addressing appellant's argument that the PCRA court erred in rejecting his claim that his "trial counsel was ineffective for failing to contest the validity of the criminal complaint and accompanying affidavit of probable cause"), appeal denied, 321 A.3d 871 (Pa. 2024).

(id. at 8).  Rather, he asserts that the misconduct by his attorneys qualifies as "[e]gregious [a]ttorney [m]isconduct" warranting equitable tolling.  See (id. (citations omitted)).  In addition, Walters argues that he was deprived of access to the courts from May 15, 2020, until March 10, 2022.  (Id.)  He also asserts that his repeated transfers over a few months in 2022 "truly effected [sic] [his] ability to access the [law library] at each facility."  See (id. at 9).

After thoroughly reviewing Walters's allegations and arguments, the Court concludes that he fails to satisfy his burden to justify equitable tolling in this case.  In this regard, Walters's purported "extraordinary circumstances," i.e., the actions of his prior counsel, the time he spent in the infirmary, and his repeated transfers between state prisons, ended no earlier than a date in the summer of 2022.  As such, even if the Court were to presume that Walters demonstrated extraordinary circumstances warranting equitable tolling, those circumstances would not cover the approximately two (2)-year period between the last event complained of and his filing of the habeas petition in this case.  In other words, Walters has not satisfied his burden to show that those circumstances "prevented him from filing a habeas petition for the entirety of the period for which he has sought tolling."  See Wallace v. Mahanoy, 2 F.4th 133, 149–50 (3d Cir. 2021) (emphasis added); see also Ross, 712 F.3d at 803 (explaining that "for a petitioner to obtain relief there must be a causal connection, or nexus, between the extraordinary circumstances that [they] faced and [their] failure to file a timely federal petition").  Accordingly, Walters's habeas claims are time-barred, and he has not demonstrated that equitable tolling applies.

The Court notes that even though the merits of Walters's grounds for equitable tolling need not be addressed because any tolling period would not cover a sufficient period rendering his petition timely, they appear to fall far short of extraordinary circumstances in any event. Regarding Walters's complaints about his prior counsel's alleged misconduct, any issues with

his initial PCRA counsel that might have resulted in disciplinary sanctions had no impact on

Walters's ability to file a timely habeas petition.  Additionally, Attorney Palermo's described

conduct (mostly consisting of not answering phone calls) is not the type of "egregious attorney

neglect" that constitutes extraordinary circumstances.  See Ross v. Varano, 712 F.3d 784, 800

(3d Cir. 2013); Merritt, 326 F.3d at 169 (explaining that "[i]n non-capital cases, attorney error,

miscalculation, inadequate research, or other mistakes have not been found to rise to the

'extraordinary' circumstances required for equitable tolling" (quoting Fahy, 240 F.3d at 244);

Devine v. Oberlander, No. 22-cv-01211, 2023 WL 2761554, at *6 (E.D. Pa. Feb. 16, 2023)

(pointing out that the Third Circuit Court of Appeals has created exceptions to the general rule

that attorney misfeasance does rise to extraordinary circumstances where only where it "caused a

truly severe obstacle to timely filing, such as where extreme attorney neglect was coupled with a

mentally incapacitated prisoner.  Ross[, 712 F.3d at 800], or (as noted in [Schleuter v. Varner,

384 F.3d 69, 76 (3d Cir. 2004)]), where the attorney falsely told the client that a petition had

been filed.  Seitzinger v. Reading Hosp. & Med. Ctr., 165 F.3d 236, 239 (3d Cir. 1999)"), report

and recommendation adopted, 2023 WL 2761122 (E.D. Pa. Apr. 3, 2023).  Furthermore, Walters

did not act with due diligence since he does not state why he did not file a protective habeas

petition after he and his family were unable to contact Attorney Palermo, see Wallace, 2 F.4th at

149–50 (determining that petitioner's ability to file protective habeas petition while PCRA

proceedings were pending "undermine[d] his diligence claim"), or seek out alternative legal

representation, and any confusion he had about his time to file a habeas petition does not excuse

his untimely filing.  See Graham v. Superintendent Somerset SCI, No. 17-3660, 2018 WL

2735398, at *1 (3d Cir. Apr. 17, 2018) (unpublished) ("[C]onfusion about or unfamiliarity with

the habeas corpus procedures is not a sufficient basis for tolling the limitations period." (citations omitted)).

Concerning Walters's complaints about his lack of access to the courts while in the infirmary, his significant filing activity during this period, which included, inter alia, two (2) attempts to seek leave or otherwise obtain habeas relief from this Court, belie his assertion that he lacked access to any court. See Walters v. Warden of SCI-Camp Hill, No. 21-cv-00230 (M.D. Pa. filed Feb. 8, 2021); Walters v. Warden, SCI Camp Hill, et al., No. 21-cv-01258 (M.D. Pa. filed July 19, 2021); CCP Docket (showing Walters filed numerous documents in his criminal case between February 2021 and May 2022; see also Walters v. Harry, et al., No. 21-cv-01290 (M.D. Pa. filed July 23, 2021) (action under 42 U.S.C. § 1983). In addition, despite his claim of a lack of access to legal materials, Walters does not sufficiently explain how that prevented him from filing a habeas petition considering all his other filings during the relevant period. Similarly, Walters's transfers between correctional facilities do not constitute extraordinary circumstances. See United States v. Thomas, 713 F.3d 165, 175 (3d Cir. 2013) ("[I]ncreased difficulty does not, by itself, satisfy the required showing of extraordinary circumstances." (citations omitted)).

### D.    Certificate of Appealability

"Unless a circuit justice or judge issues a certificate of appealability [("COA")], an appeal may not be taken to the court of appeals from . . . the final order in a habeas proceeding in which the detention complained of arises out of process issued by a State court[.]" See 28 U.S.C. § 2253(c)(1)(A). A judge may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." See id. § 2253(c)(2).

When deciding whether to issue a COA after a dismissal on procedural grounds, the Court applies the following standard:

> [w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling . . . . Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further.  In such a circumstance, no appeal would be warranted.

See Slack v. McDaniel, 529 U.S. 473, 484 (2000).  In this case, the Court declines to issue a certificate of appealability as jurists of reason would not find it debatable whether the court should dismiss with prejudice Walters's Section 2254 habeas petition as untimely and not subject to equitable tolling.

## IV.    CONCLUSION

For the foregoing reasons, the Court will (1) grant the IFP Application and Walters's two (2) motions for extensions of time, (2) dismiss with prejudice Walters's Section 2254 petition as untimely, (3) deny his motion to appoint counsel and second motion to compel as moot, (4) deem his remaining motions withdrawn for his failure to file briefs in support of the motions, (5) decline to issue a certificate of appealability, and (6) direct the Clerk of Court to close this case. An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania